# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 13-41299

United States Court of Appeals
Fifth Circuit

**FILED**

December 10, 2014

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

REAL PROPERTY KNOWN AS 200 ACRES OF LAND NEAR FM 2686 RIO GRANDE CITY, TEXAS

Defendant

DR. CARLOS RICARDO TIRADO TAMEZ,

Claimant - Appellant

Appeal from the United States District Court for the
Southern District of Texas

Before STEWART, Chief Judge, and JONES, and HIGGINSON, Circuit Judges.

CARL E. STEWART, Chief Judge:

## I. FACTUAL AND PROCEDURAL HISTORY

Plaintiff-Appellee ("United States") filed a civil forfeiture complaint ("Complaint") in rem on 200 acres of land near Farm to Market Road 2686 in Rio Grande City, Starr County, Texas ("Property"). The United States alleged Carlos Alberto Oliva-Castillo ("Oliva") to be the true owner of the Property and that Oliva purchased the property with proceeds from the sale of illegal drugs.

No. 13-41299

Oliva's criminal case is ongoing in the Southern District of Texas. A copy of the Complaint was posted on the Property by agents of the Department of Homeland Security Investigations. On December 23, 2011, the United States also published notice of the forfeiture action on an official government internet website—www.forfeiture.gov—for at least thirty consecutive days pursuant to Rule G(4)(a)(iv)(C) of the Supplemental Rule for Admiralty or Maritime Claims and Asset Forfeiture Actions ("Supplemental Rule G"). On December 7, 2011, and December 28, 2011, Dr. Carlos Ricardo Tirado Tamez ("Dr. Tirado") filed an answer and amended answer, respectively, to the Complaint claiming to be the owner of the Property. Upon motion by the United States, the district court struck Dr. Tirado's responses for failure to file a sworn claim under Supplemental Rule G.

In February 2012, Dr. Tirado and his wife Cristina Rodriguez de Tirado (collectively, "Claimants") filed a special appearance, a motion to quash and dismiss for insufficient process and service ("Motion to Quash"), a motion to dismiss for improper venue ("Venue Motion"), verified claims, a response, and an answer. The court denied the motions to quash and dismiss. In further attempts to serve Dr. Tirado, the United States executed a Mutual Legal Assistance Treaty Request ("MLAT Request") through the Treaty on Cooperation between the United Mexican States and the United States of America for Mutual Legal Assistance ("Treaty") to Mexico. After many attempts by Mexican authorities to serve Claimants via the MLAT, the United States unsuccessfully attempted service via certified international mail and by email to counsel for Dr. Tirado. The United States then moved to constructively serve Dr. Tirado by publication in Texas, which the district court granted. On April 3, 2013, the district court found that constructive service of process had been accomplished and permitted the parties to begin discovery. Dr. Tirado failed to provide initial disclosures to the United States as ordered

No. 13-41299

by the magistrate judge. The United States served requests for production on the Claimants on April 17, 2013, by certified mail. On May 28, 2013, the United States sent a copy of the same requests via facsimile and email—along with a letter requesting receipt of production. Claimants did not respond.

Claimants were scheduled for depositions on June 20, 2013. Notice of the depositions was received at the office of Dr. Tirado's counsel on May 20, 2013. On June 7, 2013, the Magistrate Judge denied Dr. Tirado's motion to stay the case and granted in part the United States' motion to compel discovery. The court gave Dr. Tirado until June 17, 2013, to turn over documents to the United States relating to the Property, as the United States needed these documents before the scheduled depositions. The court warned that further discovery failures could lead to sanctions, including striking of the pleadings. The United States filed a show cause motion on June 18, 2013, as to why Dr. Tirado had not turned over any of the requested documents. At the show cause hearing, the court again ordered production of the requested documents and ordered the depositions to go forward as scheduled. Claimants and counsel for Claimants failed to appear at the depositions on June 20, 2013.

The United States moved the court to sanction the Claimants for failure to obey the court's discovery orders by striking their pleadings with prejudice and requiring Claimants to pay the reasonable expenses incurred as a result of their failure to appear for the depositions. Pursuant to Federal Rule of Civil Procedure 37, the district court granted the United States' motion for sanctions and entered default judgment against the Claimants. On November 26, 2013, the district court entered an agreed final judgment of forfeiture against the Property. Dr. Tirado appeals the default judgment and the final judgment of forfeiture arguing improper venue, insufficient service of process, and violation of his due process rights due to the default judgment.

No. 13-41299

## II. DISCUSSION

### A. Venue

We review all questions concerning venue for abuse of discretion. *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) (per curiam); *United States v. Asibor*, 109 F.3d 1023, 1037 (5th Cir. 1997). Dr. Tirado argues that venue is improper in the Corpus Christi Division of the Southern District of Texas because the Property is located in the McAllen Division of the Southern District of Texas. Dr. Tirado thus argues the case must be dismissed because 28 U.S.C. § 1406(a)—which discusses the *cure* of venue defects—requires that "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss" the case.

Chapter 87 of Title 28 of the United States Code contains venue statues, and Chapter 85 contains statutes related to jurisdiction. 28 U.S.C. §§ 1330−69, 1390−1413. The venue statute related to in rem civil forfeiture states "[a] civil proceeding for the forfeiture of property may be prosecuted in any *district* where such property is found." § 1395(b) (emphasis added). The jurisdictional statute related to civil forfeiture allows such actions to be brought in either "the district court for the *district* in which any of the acts or omissions giving rise to the forfeiture occurred" or "any other *district* . . . specifically provided for in" § 1395. § 1355(b)(1)(A), (B) (emphasis added).

The Property in this case is in Starr County, which is in the McAllen Division of the Southern District of Texas. The fact that it is located in the territory covered by the McAllen Division does not make venue improper in the Corpus Christi Division because both divisions are within the Southern District of Texas. *See* § 1395(b). Had Congress intended to limit venue for in rem civil forfeiture to the division in which the property lies, it would have so stated. Additionally, 21 U.S.C. § 881(j) states that:

No. 13-41299

[i]n addition to the venue provided for in section 1395 of title 28 or any other provision of law . . . a proceeding for forfeiture under this section may be brought in the judicial district in which the defendant owning such property is found or in the judicial *district* in which the criminal prosecution is brought.

(emphasis added).   Oliva's criminal prosecution is ongoing in the Southern District of Texas.  Thus, under this statute, venue is also appropriate in the Corpus Christi Division of the Southern District of Texas, as no distinction is made by § 881(j) about what division within the district is appropriate. Congress, via 28 U.S.C. §§ 1355(b)(1), 1395(b), and 21 U.S.C. § 881(j), specifically clarified venue requirements in civil forfeiture cases.  None of these statutes require filing the case within a specific division of a district.

Moreover, no Fifth Circuit caselaw supports Dr. Tirado's contention.  Our caselaw is scant on the issue of improper venue based on a filing in the wrong division, but one district court case, discussing the general venue statute for civil cases, sheds light: "28 U.S.C. § 1391[] speaks in terms of *districts not divisions* . . . .  Thus, if venue is proper in the Houston Division of the Southern District of Texas it is *ipso facto* proper in the Galveston Division—as well as in the Divisions of Corpus Christi, Victoria, Brownsville, McAllen and Laredo." *Says v. M/V DAVID C DEVALL*, 161 F. Supp. 2d 752, 753 (S.D. Tex. 2001). Numerous lower courts within the Fifth Circuit have cited *Says* for this proposition, but we have not held as such. *See, e.g., Lacour v. Thompson*, No. 13-3169, 2014 WL 3542120, at *1 n.1 (W.D. La. July 16, 2014).  The issue of whether a particular division within a district can be improper under the general venue statute, § 1391, is not before us, however.  The narrow issue presented is whether, in an in rem civil forfeiture case, venue is improper when the property lies outside of the division where the action was filed, but within the same district.  To that end, Congress has spoken in terms of districts, not divisions.  *See* 28 U.S.C. §§ 1355(b)(1), 1395(b); 21 U.S.C. § 881(j).  As such, we

5

No. 13-41299

hold that in an in rem civil forfeiture case, if venue is proper in a district, it is proper in any division within that district.[1] The district court did not abuse its discretion in denying Dr. Tirado's Venue Motion, and we affirm.

**B. Service of Process**

We next consider whether the district court erred in authorizing service of process by publication. We review the district court's determination of facts in a forfeiture case for clear error. *United States v. Turner*, 460 F. App'x 346, 347 (5th Cir. 2012) (per curiam). We review district court rulings on motions to quash service for abuse of discretion. *Gartin v. Par Pharm. Cos., Inc.*, 289 F. App'x 688, 691−92 (5th Cir. 2008) (per curiam). Dr. Tirado argues the United States was required to use the method of process set out in the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents ("Hague Convention") instead of the MLAT.

If the defendant in an in rem forfeiture action is real property, the government must proceed in accordance with 18 U.S.C. § 985. *See* Supplemental Rule G(3)(a). Section 985 requires that if the property owner cannot be served with notice of the forfeiture because the owner "resides outside the United States and efforts at service pursuant to [Fed. R. Civ. P. 4 ("Rule 4")] are unavailing . . . constructive service may be made in accordance with the laws of the State in which the property is located." § 985(c)(2)(B), (C). Rule 4(f) sets out the means to serve an individual outside the United States and includes the catchall "by other means not prohibited by international agreement, as the court orders." Fed. R. Civ. P. 4(f)(3). It also allows service of foreign individuals "by any internationally agreed means of service that is reasonably calculated to give notice, *such as* those authorized by the Hague

---

[1] It is true that this case may be more *convenient* in the McAllen Division, but Dr. Tirado did not move to transfer venue for convenience under 28 U.S.C. § 1404(a).

Convention." *Id.* 4(f)(1) (emphasis added). Moreover, the Hague Convention does not apply when the address of the person to be served is unknown. Hague Service Convention, art. 1, Nov. 15, 1965, 20 U.S.T. 361.

For service of process in foreign countries, Texas Rule of Civil Procedure 109 allows for service by publication if the address of the individual is unknown, despite diligent efforts to locate the individual, and there has been an unsuccessful attempt under Rule 108a to obtain personal service. Tex. R. Civ. P. 109. Texas Rule of Civil Procedure 108a allows for personal service of a party in a foreign country "as directed by [a] foreign authority in response to . . . a letter of request" or "in the manner provided by Rule 106." Tex. R. Civ. P. 108a(1)(b), (c). Rule 106 allows for service by personal delivery or by registered or certified mail. Tex. R. Civ. P. 106(a)(1), (2).

Thus, in an in rem civil forfeiture action in federal court involving property located in Texas, constructive service is allowed for foreign individuals according to the laws of Texas, but only after efforts to serve the individual under Fed. R. Civ. P. 4 have been attempted. 18 U.S.C. § 985(c)(2)(C). Contrary to Dr. Tirado's argument, to comply with Rule 4, the United States was not required to use the method of service laid out in the Hague Convention, but instead could use "other means not prohibited by international agreement, as the court order[ed]." Fed. R. Civ. P. 4(f)(3). The United States made attempts to serve the Claimants in compliance with Rule 4 by submitting an MLAT Request from the Department of Justice's Office of International Affairs to the Central Authority of the United Mexican States to request the assistance of the Mexican authorities to properly serve the Claimants.[2] The Mexican authorities summoned Dr. Tirado to appear on

---

[2] Dr. Tirado claims the use of the MLAT Request was improper because the Treaty only applies to criminal proceedings. This is plainly wrong, as the Treaty covers "ancillary

No. 13-41299

February 24, 2012 at the Mexican Attorney General's office in the state of Tamaulipas. The Mexican authorities also went to Dr. Tirado's listed address in the city of Diaz Ordaz and left notice in the mailbox. The Mexican authorities again visited the listed address and spoke to an individual there who said she would notify the Claimants of their visit. The Mexican authorities also attempted to visit a listed address in the city of Rio Bravo, but no home existed at that address.

After unsuccessful attempts under Rule 4(e)(3) via the MLAT Request, federal law allowed the United States to serve Dr. Tirado via constructive notice in accordance with the laws of Texas. *See* 18 U.S.C. § 985(c)(2)(C). Before publication, Texas law first required the United States to attempt to serve Dr. Tirado in-person or via mail under Rule 106, which it did via mail to the Diaz Ordaz address. *See* Tex. R. Civ. P. 106, 108a(1)(c). Alternatively, Rule 108 allowed the United States to rely on the Mexican authorities' attempts of service made under the MLAT Request. *See* Tex. R. Civ. P. 108a(1)(b). In an abundance of caution, the United States also posted notice on the Property, emailed counsel for Dr. Tirado, and published notice on an official government website. After these unsuccessful efforts at service, the district court deemed the address of Dr. Tirado unknown under Rule 109. The district court then allowed service of Dr. Tirado by publication. *See* Tex. R. Civ. P. 106, 109.

We agree that, given the extensive yet unsuccessful measures taken by the United States to locate Dr. Tirado, his address was unknown. We agree that the United States' efforts to serve Dr. Tirado through the MLAT Request and its own means constitute due diligence sufficient to allow service by

---

proceedings of any other kind related to the criminal acts in question." MLAT U.S.-Mex., Art. 1, Cl. 1.

publication under Tex. R. Civ. P. 109. The district court did not abuse its discretion in finding that the Claimants had been properly served.

### C. Default Judgment

Dr. Tirado also argues the district court's striking of his pleadings, as a sanction for noncompliance with its discovery orders, was improper. The striking of the pleadings led to a default judgment against the Claimants. Dr. Tirado argues the default judgment violated his Due Process rights because the sanctions were too severe, the magistrate court was without power to order initial disclosures, Dr. Tirado had no burden of production for documents not in his possession, and the depositions were improperly scheduled in Corpus Christi, Texas.

We review a grant of sanctions under Fed. R. Civ. P. 37 ("Rule 37") that results in the entry of default judgment for abuse of discretion. *United States v. $49,000 Currency*, 330 F.3d 371, 376 (5th Cir. 2003) (citing *Smith v. Smith*, 145 F.3d 335, 344 (5th Cir. 1998)). "[W]here a district court awards default judgment as a discovery sanction, two criteria must be met." *Id.* (citation omitted). "First, the penalized party's discovery violation must be willful." *Id.* (citation omitted). Second, "the drastic measure is only to be employed where a lesser sanction would not substantially achieve the desired deterrent effect." *Id.* (citation omitted). We may "consider whether the discovery violation prejudiced the opposing party's preparation for trial, and whether the client was blameless in the violation." *Id.* (citing *Batson v. Neal Spelce Assocs., Inc.*, 765 F.2d 511, 514 (5th Cir. 1985)).

Dr. Tirado, after being properly constructively served, repeatedly failed to comply with court-ordered discovery. Dr. Tirado failed to provide initial disclosures, failed to respond to requests for production that the United States required in order to properly depose the Claimants, and—without seeking a protective order—failed to appear at scheduled depositions. The court gave Dr.

Tirado multiple chances to comply with its orders and even warned him and his counsel several times as to the possible consequences of noncompliance with its orders. Dr. Tirado willfully chose not to comply. Thus, the first requirement for sanctions resulting in default judgment is met. *See $49,000 Currency*, 330 F.3d at 376. Additionally, the trial court was within its discretion in granting default judgment because there is no evidence that, after seventeen months of litigation, Dr. Tirado would begin to comply with the court's orders regarding discovery after the imposition of some lesser sanction. *See id.* As failure to provide any and all information requested would certainly prejudice the United States, and Dr. Tirado has not shown he is blameless in his noncompliance, the district court did not abuse its discretion in awarding sanctions that resulted in default judgment. *See id* at 377.

Regarding the initial disclosures, Fed. R. Civ. P. 26(a)(1) ("Rule 26") covers initial disclosures that are automatic, and thus the exemptions set out in subsection (B) only exempt *automatic* initial disclosures in federal in rem forfeiture proceedings. Fed. R. Civ. P. 26(a)(1)(B)(ii). The magistrate judge was within her discretion to supplement or modify initial disclosures required by Rule 26. *See* Fed. R. Civ. P. 26, Advisory Committee Note, 1993 Amendment (stating that "[b]y order the court may eliminate or modify the disclosure requirements in a particular case[.]"). The court deemed the Claimants constructively served with process on April 3, 2013. The initial disclosures were ordered on April 18, 2013. Requiring these "initial" disclosures seventeen months into the case was within the "broad discretion [the district court has] in its resolution of discovery problems." *In re Multi-Piece Rim Prods. Liab. Litig.*, 653 F.2d 671, 679 (D.C. Cir. 1981). As the 2006 Amendment note to Rule 26 states, civil forfeiture actions were added as an exempt category because "[d]isclosure is not likely to be useful." Here, the court determined they were useful. Further, although the court required the same information

contained in Rule 26(a)(1) to be submitted, this is not the sort of automatic initial disclosure that generally occurs in a case. Requiring the submission of this information after Dr. Tirado has filed a claim in the case and was deemed constructively served was not an abuse of discretion.

Dr. Tirado also argues he had no burden of production for documents not in his possession. Mere noncompliance with discovery requests will not suffice; Dr. Tirado was required under Rule 26(g) to respond in a signed writing objecting to the discovery requests stating the reason for his objection. Fed. R. Civ. P. 26(g).

Lastly, regarding the location of the depositions, Dr. Tirado did not seek a protective order under Rule 26(c). Dr. Tirado has made a claim in an in rem civil forfeiture action pending in Corpus Christi, Texas. If he wished to be deposed elsewhere, he should have sought a protective order.

### III. CONCLUSION

In sum, we AFFIRM the district court in its denial of the Venue Motion, the Motion to Quash, and its order of discovery sanctions resulting in default judgment against Dr. Tirado.

11